# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John A. Nordberg | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 11 C 2224 | **DATE** | 3/14/2012 |
| **CASE TITLE** | John Zimmers vs. Berger Realty Group, LLC *et al.* | | |

**DOCKET ENTRY TEXT**

Defendant's Combined Motion for Summary Judgment and Motion to Dismiss the Complaint [19]is denied. A status hearing is set for April 4, 2012. The parties should prepare a proposed preliminary pretrial scheduling order and submit it to chambers a day before the hearing.

■[ For further details see text below.]   Docketing to mail notices.

## STATEMENT

   This case arises out of a failed business relationship between plaintiff John Zimmers and defendant Robert Berger. Before the Court is defendants' motion to dismiss several counts in the seven-count complaint.
   The following facts are taken from the complaint and assumed true for purposes of this motion. Beginning in 2004, Berger tried to convince Zimmers to leave his current job and to come work for Berger's real estate company -- Berger Realty Group, LLC ("BRG"). Zimmers declined the offer. In 2006, Berger tried again, offering Zimmers the job of property manager and promising him a 20% ownership stake in BRG. But Zimmers did not want to leave his current job unless he had long-term security. So, Berger promised to give Zimmers job security "for life" by putting BRG's assets in a "500 year perpetual trust with instructions for BRG to manage them permanently." (Cmplt. ¶ 9.) Berger later agreed he would obtain Zimmers' consent before making any important decisions for BRG. Based on these promises, which were set forth in a two-page letter agreement signed by both men (attached as Exhibit A to the complaint), Zimmers began working for BRG. Thereafter, Berger allegedly charged personal expenses such as holiday gifts and personal legal fees to the company; and he unilaterally lowered management fees charged to other entities Berger owned, thereby personally enriching himself while hurting BRG. When Zimmers complained, Berger agreed to increase Zimmers' ownership share from 20% to 35%. This promise was set forth in a second letter agreement, signed by both men in early 2009. *See* Cmplt. Ex. B. In February 2010, Berger told Zimmers he was dissolving BRG, which meant that Zimmers was fired from his job. Berger gave Zimmers a check purporting to be his 35% share of the value of BRG upon dissolution. Zimmers asked for a formal accounting but Berger refused. Zimmers now alleges he was fired because he refused to carry out Berger's discriminatory instructions to fire employees who were Hispanic, gay, elderly, or had children. Thereafter, Berger allegedly defamed Zimmers by refusing to pay BRG vendors unless they agreed to falsely say that Zimmers had taken bribes.
   Zimmers filed a seven-count complaint, asserting claims for breach of fiduciary duties (Count I); breach

| STATEMENT |
|---|

of contract (Count II); violation of the Illinois Limited Liability Company Act (Count III); fraudulent misrepresentation (Count IV); defamation (Count V); retaliation under Title VII (Count VI); and retaliation under the Age Discrimination in Employment Act (Count VII).

In their motion and opening brief, defendants advanced three arguments. The first one was that the two discrimination claims are not actionable because defendants did not employ enough employees to meet the Title VII and the ADEA statutory thresholds. During the course of briefing and through the exchange of some preliminary discovery materials, the defendants agreed to drop this argument because the facts are not yet clear. *See* Docket # 27. This leaves two arguments. First, defendants argue the breach of fiduciary duty claim (Count I) is barred as a derivative claim. Second, defendants argue the fraud claim (Count IV) is not plead with sufficient particularity.

**Count I -- Derivative or Personal?** Count I is a claim for breach of fiduciary duties in violation of the Illinois Limited Liability Company Act. It is directed at both BRG and Berger. Paragraph 33 lists five specific actions: (a) charging Berger's personal expenses to BRG; (b) unilaterally lowering management fees to personally benefit Berger; (c) refusing to pay Zimmers his share of BRG profits from 2007 to 2010; (d) failing to give Zimmers a formal accounting when his ownership interest was terminated; and (e) falsely representing that BRG would "shut down" when it never did.

Defendants argue that Count I should be dismissed because it seeks recovery for losses incurred by BRG only and not for losses uniquely suffered by Zimmers. If so, then Count I is a derivative claim, and Zimmers must comply with the pleading requirements of Fed. R. Civ. P. 23.1 and Section 40-10 of the Illinois Limited Liability Company Act. Specifically, Zimmers must plead with particularity the efforts made to cause BRG to initiate the action itself or the reasons why he made no such effort. It is undisputed that Zimmers has not met this pleading requirement.

Zimmers raises several arguments in response. His main one is to ask this Court to relax the derivative requirements because BRG was operating more like a partnership than a corporation. He claims that courts "time and again" have held that derivative actions do not make sense where, as here, there is a two-person LLC. (Pl. Resp. at 7.) He relies heavily on *Gas Technology Institute v. Rehmat*, 524 F.Supp.2d 1058, 1066-67 (N.D. Ill. 2007) ("the more different an entity is from a corporation, the more flexible courts should be in applying rules regarding derivative actions"). We are not persuaded by this argument. Although Zimmers suggests numerous courts have created a judge-made exception, he only cites to one case, a district court decision. While this case does contain some general language about the problems of applying the normal derivative rules to small corporate entities, the decision goes on to say (as defendants here point out) that the claims there were directed at unique personal injuries and as such were not derivative claims but instead were direct claims. In any event, the Seventh Circuit in an earlier case has explicitly rejected the argument Zimmers is now making. *Frank v. Hadesman and Frank, Inc.*, 83 F.3d 158, 161 (7th Cir. 1996). While acknowledging that legitimate arguments exist for relaxing the derivative requirements, the Seventh Circuit nevertheless held that it had no authority for creating a "special rule" for close corporations: "None of the Illinois cases we have found establishes, or even hints at, any discretionary power to treat a derivative injury as if it were direct." *Id.* at 162. Thus, as between these cases, we are obligated to follow *Frank*, which rejects the argument now being made by Zimmers.

Zimmers' next argument is that Count I is directed at individual rather than corporate injuries -- *i.e.* it is not a derivative claim after all. This argument is partly correct. On this question, the parties' briefs are ships passing in the night. Defendants focus entirely on the first two subsections of Paragraph 33 while Zimmers focuses on the latter three. If the analysis is limited to the first two, then defendants are correct. Subsection (a) states that Berger charged personal expenses to BRG. Defendants argue this is a "looting" claim which courts have held to be a classic example of a derivative claim. (Defs. Br. at 8, *quoting Domanus v. Lewicki*, 645 F.Supp.2d 697, 703 (N.D. Ill. 2009).) We agree. As for subsection (b), which concerns the unilateral lowering of management fees, defendants point out that the complaint itself explicitly states that this action harmed BRG but helped Berger. *See* ¶ 33(b) ("Berger benefitted personally, while BRG suffered significant

financial losses, totaling over $73,000"). Zimmers does not offer any argument in response.

However, as to the latter three subsections, defendants offer no argument. As Zimmers correctly points out in his response brief, these allegations concern injuries that are unique to him and different from those incurred by BRG. For example, in subsection (c), Zimmers alleges that BRG failed to fully pay his partnership profits from 2007 to 2010. If true, this failure to pay would harm only Zimmers and would actually benefit BRG by lowering its costs. A similar analysis applies to subsections (d) and (e). Thus, with respect to these three subsections, we find that Count I can go forward. We therefore will not grant the motion to dismiss Count I.

Finally, the parties argue about whether BRG had a fiduciary duty directly to Zimmers. Defendants assert that the Illinois LLC Act does not impose a duty on the corporate entity itself. Zimmers does not contest this assertion, but argues that BRG had a duty by virtue of the trust relationship which was created. In its reply, defendants suggest that the alleged promise to create a trust was never carried out and therefore no trust relationship was created. These arguments get into factual disputes that we cannot resolve on a motion to dismiss. The parties can address this issue on a motion for summary judgment after discovery.

**Count IV -- Pleading fraud with particularity.** Count IV specifically mentions two false representations: (i) defendants falsely promised they would provide Zimmers job security "for life" by putting BRG's property in a 500-year perpetual trust and (ii) they falsely represented that BRG's management fees were higher than what they were. (Cmplt. ¶ 45.) Defendants argue that Zimmers has failed to provide the requisite particularity required by Rule 9(b). *See, e.g.*, *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990) (describing Rule (b) in terms of the "first paragraph of any newspaper story" -- *i.e.* "the who, what, when, where, and how"). According to defendants, the complaint is too vague because it merely alleges the two representations were made in "pre-employment discussions," which defendants believe is "effectively meaningless" because these discussions covered a three-year period starting from the first contact in August 2004 until Zimmers was hired in September 2007. (Defs. Br. at 11.)

In response, Zimmers points to Paragraphs 8, 9, and 13, which refer to these promises being made in the context of the discussions taking place in November 2006. These promises were later put into a written document, dated June 27 2007. Zimmers also states that Rule 9(b) should be interpreted in light of its underlying purposes. These include informing the defendants of the claims so that they may prepare an adequate defense and eliminating the filing of a conclusory complaint as a pretext for using discovery to uncover wrongs. (Pl. Resp. at 9, *citing cases*).) Zimmers argues he has plead sufficient facts to meet these purposes.

We agree. As a general point, the complaint contains a fair amount of detail. It is 16 pages with 67 paragraphs. It attaches five exhibits. Two of them are letter agreements setting forth a number of specific written promises made on a specific date. As for the two false representations, the complaint states that the promise of employment "for life" was made as part of the promise to set up a perpetual trust. Both letter agreements refer, at least in general terms, to a perpetual management of assets. Contrary to defendants' assertion that the complaint merely states that the promise was made during a three-year period of pre-employment discussions, the complaint is actually more specific. It states that the promise of job security was made after Zimmers rejected Berger's offer in November 2006. *See* ¶¶ 8-9. Moreover, this promise as well as others were then put into writing on June 27, 2007. The complaint further states that this promise was repeated in or around November 2007. *See* ¶ 17 ("'Berger again assured Plaintiff that he had job security 'for life'"). The other representation concerning the amount of management fees was also made after the November 2006 offer and before the June 2007 written agreement. *See* ¶ 9.

In deciding how much detail is enough for purposes of Rule 9(b), we are guided by the Seventh Circuit's observation that, in applying the "who, what, when, where, and how" formulation, "the exact level of particularity that is required will necessarily differ based on the facts of the case." *Anchorbank, FSB v. Hofer*, 649 F.3d 610, 615 (7th Cir. 2011) (reversing the district court's granting of a motion to dismiss based on Rule 9(b)). Here, in light of the details summarized above, we find that the complaint is sufficient. This

| STATEMENT |
|---|
| conclusion is buttressed by the fact that this motion to dismiss only addresses one of the seven counts in the complaint. Even if the motion were granted, discovery on all these issues would still go forward. Rather than dismiss the complaint and then allow plaintiff the chance to file an amended complaint, which in turn likely would trigger a second motion to dismiss with further briefing and then a second court ruling, we find that the better approach is to simply go forward with discovery and allow the parties to raise these issues again on a motion for summary judgment at which point the facts will be more clearly presented. |